IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division


FILED
OCT 27 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**ERNEST DWAYNE RILEY,**

Petitioner,

v.  **CRIMINAL ACTION NO. 2:19-cr-124**

**UNITED STATES OF AMERICA,**

Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Ernest Dwayne Riley's ("Petitioner") *pro se* motion, pursuant to 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence. ECF No. 50. The Government opposed the motion and Petitioner replied. ECF Nos. 53, 54. Having reviewed the motion and filings, the Court finds that a hearing is not necessary to address Petitioner's motion. *See* 28 U.S.C. § 2255(c). For the reasons set forth below, Petitioner's § 2255 Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 10, 2019, a federal grand jury returned a three-count Indictment charging Petitioner with Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count one); False Statement During Purchase of a Firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) and 2 (Count Two); and False Statement in Records Required to be Maintained by Federally Licensed Firearms Dealer, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Count Three). ECF No. 13. On September 16, 2019, Petitioner pleaded guilty to Count One of the Indictment. ECF Nos. 26, 27. On January 6, 2020, the Court held a sentencing hearing where the Court accepted the Petitioner's guilty plea and accepted the Petitioner's request to consider the contents of a letter he wrote as his allocution. ECF Nos. 38, 40, 41. The Court then imposed a 49-

month sentence on Count One. ECF Nos. 38, 41. Petitioner is currently scheduled to be released on May 3, 2023.

On August 14, 2020, Petitioner filed the instant Motion to Vacate Sentence under 28 U.S.C. § 2255. ECF Nos. 50, 51. The United States opposed the motion on October 5, 2020. ECF No. 53. On October 19, 2020, Petitioner filed a reply to the United States' opposition. ECF No. 54. Therefore, the matter is now ripe for judicial determination.

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

## B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance

must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III. DISCUSSION

Petitioner claims three grounds for relief based on ineffective assistance of trial counsel. First, Petitioner argues that trial defense counsel failed to explain the *mens rea* elements of the 922(g)(1) offense requiring the government to prove that the Petitioner knew he was in a class of prohibited people. ECF Nos. 51, 50 at 2. Second, Petitioner argues that counsel failed to object to the Court's "mistaken omission of [his] right to allocute," *Id.* at 5. Third, Petitioner argues that

counsel "advised [him] that inadmissible and unrelated uncorroborated evidence unlawfully seized from his cell phone incident to arrest would be charged against him if he didn't plead guilty to the ... 922(g)(1) offense" and the Government "gain[ed] a tactical advantage" over him because of it. *Id.* at 7. The Court will address each claim in turn.

### A. Petitioner's was Informed by Counsel About the *Mens Rea* Element

Petitioner argues that counsel failed to explain the *mens rea* elements of the 18 U.S.C. §§ 922(g)(1) offense requiring the government to prove that the Petitioner knew he was in a class of prohibited people. Pursuant to 18 U.S.C. §§ 922(g)(1), it is unlawful for a person "convicted in any court, of crime punishable by imprisonment for a term exceeding for a year" to possess a firearm. ECF Nos. 51, 50 at 2. Petitioner argues that he informed his defense counsel "during numerous discussions that he [Petitioner] believed he was not a convicted felon because he previously only served fourth months incarceration, he was never previously convicted for a felony, and that was the reason [Petitioner] allowed the firearm transaction to be recorded." ECF Nos. 51 at 2. Moreover, Petitioner argues that he informed the Court that he "'had no idea that [he] was ineligible to own a firearm until [he] went to the store to purchase one.'" *Id.* at 3 (citing Sentencing Hr'g Tr. at 22).

The Government argues that Petitioner's claim fails because his "'conclusory affidavit[]' that simply restates his claim falls well short of counteracting the strong evidence showing that, at the time he possessed the gun in question, he knew that his conviction made him prohibited from possessing a firearm." ECF No. 53 at 8. Specifically, the Government points to the Petitioner's Statement of Facts, made under-oath at the plea hearing, and his attorney's "specific, detailed, and unequivocal affidavit[]," which show that Petitioner was aware that he could not purchase a

5

firearm because he was a convicted felon. (citing *United States v. Johnson*, No. 3:14CR80, 2018 WL 4568609, at *2 (E.D. Va. Sept. 24, 2018)).

The Court finds that there is overwhelming evidence to show that Petitioner was aware of the *mens rea* requirement and that he knew that he was in a class of people prohibited from purchasing a firearm but did so anyway.

First, the Petitioner admitted under oath in his Statement of Facts that, "[a]t the time of the offense, [he] was prohibited from possessing a firearm because he had been previously been convicted for a crime punishable by imprisonment for a term exceeding one year," that he "knew about his conviction," and that he "had not had his right to possess a firearm restored." ECF No. 27 at ¶ 3. Furthermore, Petitioner admitted under oath that "on the Form 4473, [he] knowingly lied and intended to deceive the gun shop about a material fact about the lawfulness of the sale by checking the box indicating that [he] had not 'been convicted in any court for a felony, or any other crime, for which the judge could imprison [him] for more than one year,' even though [he] knew, then and there, that he had been convicted of a crime punishable by more than one year." *Id.* at ¶ 4. Notably, the Petitioner signed the Statement of Facts as true and accurate under oath "after consulting with [his] attorney." *Id.* at 4.

Second, Petitioner's claim is undermined by his sworn statement at the Plea Hearing where he said that he "had an adequate opportunity to confer with [his attorney] to prepare for the hearing," that he was "satisfied with the effectiveness of his [attorney]'s advocacy," that his decision to plead guilty was "made on [his] own," that he "sign[ed] off on th[e] statement of facts" and agreed it is "an accurate account of what happened in this particular case." Sentencing Tr. at 3–9, 19–20. Moreover, Petitioner admitted under oath that he had never "been convicted of a felony before," but that he had no "questions about what [he was] pleading guilty to." *Id.* 5-6.

6

Third, Petitioner's claim is undermined by his own defense counsel's affidavit where counsel states, "prior to [Petitioner] entering his guilty plea to the Indictment, I ... fully reviewed the relevant case law related to the specific indictment and count that [he] was pleading guilty to, including the knowledge requirement in *Rehaif v. United States*, 139 S. Ct. 2191 (2019)," and "fully reviewed the Statement of Facts, page by page." ECF No. 53 at Exhibit 3 at ¶ 4. Defense counsel also stated that Petitioner "always appeared to fully understand the law, his rights and the consequences of a guilty plea." *Id.* at ¶ 5. Finally, defense counsel stated that "[Petitioner] advised [counsel] that he fully knew and understood that he could not purchase or possess a firearm, since the misdemeanor he had been convicted of in Maryland was punishable by a ten (10) year sentence." *Id.* at ¶ 6.

Fourth, during the Petitioner's sentencing hearing, the Court inquired as to whether Petitioner had knowledge that he could not purchase the firearm because the Petitioner's letter indicated that "he had no idea that [he] was ineligible to own a firearm until [he] went to the store to purchase one in September." Sentencing Hr'g Tr. at 22; *see also* ECF No. 40 at 26. The Court then asked defense counsel to clarify Petitioner's position because his letter was inconsistent with the Statement of Facts. Sentencing Hr'g Tr. at 22. However, the Court determined that his letter, not signed under oath, was inconsistent with the Statement of Facts he had signed where he explicitly stated that he knew he was prohibited from purchasing a firearm. *Id.* 26. In the same hearing, the Court provided Petitioner with an opportunity to object to its conclusions about his *Rehaif* claim and Petitioner stated that he understood and agreed by stating "yes." Sentencing Hr'g Tr. at 27.

Therefore, based on Petitioner's Statement of Facts, his under-oath statements at the plea hearing, his attorney's sworn statement, and the Sentencing hearing, the Court finds that Petitioner knew before the plea hearing about *Rehaif*'s knowledge requirement and knew that his conviction

put him in a class of those prohibited from possessing firearms. Accordingly, since Petitioner cannot show trial counsel's performance was deficient, the claim of ineffective assistance of counsel fails.

### B. Petitioner Was Given an Opportunity to Allocute

Petitioner argues that defense counsel failed to object to the Court's "mistaken omission of [his] right to allocute," ECF No. 50 at 5. Specifically, Petitioner argues that he was denied the right to speak and allocute at his sentencing hearing. *Id.*

The Court finds that Petitioner's claim is meritless. At Petitioner's sentencing hearing, Petitioner asked the Court for permission for allocution through a letter or "personal statement." Sentencing Hr'g Tr. at 2–3; ECF No. 40 at 26 (Petitioner's "personal statement"). At first, Petitioner did not have the letter on hand, so the Court directed him to "summarize what he had to say in the letter" at the appropriate time. *Id.* However, defense counsel was able to provide the letter and handed it to the Court, and the Court read and ordered it filed instead of having the defendant summarize it. *Id.* at 21; *see also* ECF No. 40 at 26. Accordingly, Petitioner's defense counsel could not object because Petitioner's right to allocution was satisfied. In the absence of deficient performance of trial counsel, Petitioner's claim of ineffective of counsel fails.

### C. Petitioner's Claim About the Phone Evidence is Conclusory and Unsupported

Petitioner argues that defense counsel "advised [him] that [the] inadmissible and unrelated uncorroborated evidence unlawfully seized from his cell phone incident to arrest would be charged against him if he didn't plead guilty to the … 922(g)(1) offense" and the Government "gain[ed] a tactical advantage" over him because of it. ECF No. 50 at 7. Moreover, Petitioner claimed that the evidence of guns and drugs on his phone was present because "he was a scammer, and didn't

traffick (*sic*) in drugs, and was simply attempting to persuade people to mail money by con." ECF No. 50 at 9.

The Government argues that Petitioner's Fourth Amendment challenge to the phone evidence and an accusation of prosecutorial misconduct are not "cognizable on collateral review [because] the defendant had a 'full and fair' opportunity to litigate the claim on direct appeal." ECF No. 53 at 13 (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)). Moreover, the Government argues that Petitioner's alternative explanation for the evidence of drugs and weapons found on his phone is "nonsensical, supported by no factual allegations, and warrant[ing] no serious discussion." *Id.* (citing *El-Amin v. United States*, No. 316CR222RJCDSC1, 2018 WL 2244724, at *4 (W.D.N.C. May 16, 2018).

First, the Court finds that, based on his counsel's affidavit, Petitioner "was aware of and agreed that in light of the government not pursuing additional charges against him, the government would argue that his other uncharged bad conduct was relevant for the Court to consider at sentencing." ECF No. 53 at Exhibit 2 at ¶ 8. Also, the Court finds that Petitioner was aware that the Court would consider "all conduct related to the count of conviction, the other charges [he did not plead to,] and the statement of facts" *Id.* Accordingly, since Petitioner cannot show trial counsel's performance was deficient, the claim of ineffective assistance of counsel fails.

Second, the Court finds that because the Petitioner did not raise the Fourth Amendment claim or prosecutorial misconduct claim on direct appeal, he, therefore, cannot raise this claim collaterally in his § 2255 motion. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). The United States Court of Appeals for the Fourth Circuit has held that in order "to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he

complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, at 492–93 (4th Cir. 1999); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982) (The *Frady* rule is that a petitioner who has defaulted procedurally in seeking correction of the errors about which he complains in a collateral proceeding must show cause and prejudice with respect to the default.). Here, the Court finds that Petitioner's claim is a "conclusory allegation[] contained in a § 2255 petition" which may be disposed of without further investigation by the district court because it was not raised on direct appeal and Petitioner has not demonstrated a miscarriage of justice would result from not entertaining this claim. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

## IV. CONCLUSION

For the reasons stated above, Petitioner's 2255 Motion is **DENIED**.

The Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based on incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date.

The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 27, 2020

/s/
Raymond A. Jackson
**United States District Judge**